UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| 8 WEST 58TH STREET HOSPITALITY, LLC | Case No. 14-11524 (SHL) |
| Debtor. | |

-----------------------------------------------------------------x

## MEMORANDUM OF DECISION AND ORDER

**A P P E A R A N C E S :**

**GOLDBERG WEPRIN FINKEL GOLDSTEIN LLP**
*Counsel to 8 West 58th Street Hospitality, LLC*
1501 Broadway, 22nd Floor
New York, New York 10036
By:    J. Ted Donovan
       Kevin J. Nash

**PICK & ZABICKI LLP**
*Counsel to Be My Guest LLC*
369 Lexington Avenue, 12th Floor
New York, New York 10017
By:    Douglas J. Pick
       Eric C. Zabicki

**SEAN H. LANE**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court are two motions: Be My Guest LLC's ("BMG") Motion to Allow for Limited Relief from the Order Pursuant to Bankruptcy Rule 9024 ("BMG's Motion") (ECF No. 68) and 8 West 58th Street Hospitality LLC's (the "Debtor") Motion to Compel Compliance with Order Approving Plan Funding Agreements ("Debtor's Motion to Compel") (ECF No. 76). The Court preliminarily denied BMG's Motion and granted in part the Debtor's Motion to Compel from the bench, and this decision is issued to provide a more detailed explanation of the Court's ruling.

**BACKGROUND**

The Debtor was formed in February 2012 to develop and operate a restaurant. To that end, the Debtor entered into a lease agreement (the "Lease") in August 2012 that covered the premises at 14 East 58th Street, New York, New York (the "Premises") with Lawrence Friedland and the Estate of Melvin Friedland (together, "Friedland"). As of January 1, 2014, Friedland's rights under the Lease were assigned to 14 East 58th LLC (the "Landlord"). While the restaurant opened in fall 2013, the Debtor ultimately defaulted under the payment terms of the Lease. In March 2014, the Landlord commenced proceedings in the Civil Court of the City of New York seeking to evict the Debtor from the Premises. On May 20, 2014, the Debtor filed for protection under Chapter 11 of the Bankruptcy Code. In June 2014, the Landlord filed a motion to compel the Debtor to pay its post-petition obligations under the Lease. *See* Motion to Compel Debtor to Immediately Pay Post-Petition Obligations Due under Non-Residential Real Property Lease (ECF No. 6).

In 2014, the Debtor's principal, Max Burgio entered into negotiations with an individual named Nello Balan regarding the possible funding of the Debtor's exit from Chapter 11. As a result, the Debtor entered into its first agreement with Nello Balan and his daughter Lucy Balan (together, the "Balans"), entitled "Letter Agreement for the restructuring of the restaurant located at 8 West 58th Street, New York City, New York 10022," dated July 9, 2014 (the "July Letter Agreement") (Exh. B to BMG's Motion (ECF No. 68-3)). The July Letter Agreement provided for the restructuring of the restaurant in Chapter 11 with Lucy Balan, either individually or through BMG, acting as the ultimate funder of the reorganization plan (the "Proposed Plan"). *See* July Letter Agreement at 1. The July Letter Agreement itemized payments to be made under the Proposed Plan, which included a buy-out of limited partners in the amount of $350,000, and

2

a $100,000 payment upon confirmation to Mr. Burgio as "deferred compensation." *Id.* at 2. Additionally, Mr. Burgio would have a 25% membership interest in the Debtor, along with Lucy Balan (35% interest), and Oswaldo Karam (40% interest). *Id.* Following confirmation of the Proposed Plan, Lucy Balan would then designate a management company to operate and manage the restaurant, with Mr. Burgio to serve as general manager. *Id.*

On September 4, 2014, the Court entered a consent order to resolve the Landlord's motion to compel under which the Landlord was to receive $132,475.678, plus September 2014 base rent. *See* Consent Order ¶ 1 (ECF No. 21). Later that September, the Debtor filed a motion to assume and assign the Lease under 11 U.S.C. § 365(a) and (f). *See* Motion to Assume Leases or Executory Contracts and Assign Lease (ECF No. 28).

In the meantime, relations between Mr. Balan and Mr. Burgio had deteriorated to the point that it became necessary to reconsider the membership interests of the Debtor going forward. *See* Hearing Transcript ("Hr'g Tr.") of October 29, 2014 at 7:4–19 (ECF No. 47). By letter of October 20, 2014, Mr. Balan, Mr. Karam, and Mr. Burgio entered into an agreement that superseded "in relevant part only" the July Letter Agreement (the "October Letter Agreement") (Exh. D to BMG's Motion (ECF No. 68-5)). In the October Letter Agreement, Mr. Burgio forfeited any ownership or other interest of any kind in BMG or to any restaurant or business to be operated at the Premises. *See* October Letter Agreement at 1. In exchange, Mr. Burgio would be paid a total of $900,000, "to be personally guaranteed by Nello, Lucy or the entity they use to invest in BMG." *Id.* BMG would guarantee all the payments set forth in the October Letter Agreement except for a $150,000 payment to be made on December 15, 2014 by Mr. Balan. *See id.* The $900,000 was broken into five payments, the relevant payments here being: $150,000 on

3

December 15, 2014, payable by Nello and two payments of $300,000 "as a consulting fee" payable by BMG. *Id.*

A hearing was held on October 29, 2014 (the "October 29th Hearing") to consider the Debtor's motion to assume and assign the Lease. At the hearing, counsel was present for the Debtor, BMG, and the Landlord. The parties informed the Court of a final agreement that resolved security for certain payments under the October Letter Agreement as follows: (i) the $600,000 consulting fee payment to Mr. Burgio would be secured by a confession of judgment from BMG; and (ii) the $150,000 deferred payment to Mr. Burgio would be subject to a confession of judgment from Nello Balan and/or his daughter Lucy. Hr'g Tr. of October 29, 2014 at 19:20–20:15. The parties also agreed to extensions of time for some of the payments, including: (1) extending the date by which Mr. Burgio was to be paid the $150,000 from December 15, 2015 to January 15, 2015; and (2) deferring the $600,000 in consulting fees until March 1, 2015. *See id.* at 19:20–22. No party raised any objections to the terms of the final agreement or to the Debtor's request to have the hearing transcript "so-ordered" by the Court. *Id.* at 20:25–21:7. After the hearing, a proposed order was circulated among the parties. Once all parties had an opportunity to propose and implement changes, the order was submitted to the Court on consent. No objections were made and the order was entered on November 6, 2014. *See* Order Authorizing Assumption and Assignment of the Debtor's Commercial Lease for Premises at 14 East 58th Street, New York, NY (the "Order") (ECF No. 35). The Order provided that BMG agreed to fund a plan based upon the "Plan LOI" in return for the assignment of the Lease to BMG. *See* Order at 1. The Order defined the "Plan LOI" as: "(i) the Letter of Intent dated July 9, 2014, as supplemented by letter dated October 20, 2014; and (ii) the statements made on the so-ordered record of the [October 29, 2014] Hearing relating to the

4

execution of confessions of judgment by BMG and Nello Balan and/or Lucy Balan to secure certain deferred payments to Max Burgio." *See id.*

BMG did not make the $150,000 payment to Mr. Burgio on January 15, 2015 as required by the Order. The Debtor sent copies of a draft plan and disclosure statement to the parties and received no comments. *See* Debtor's Motion to Compel ¶ 30. On January 29, 2015, the Debtor filed its proposed plan and disclosure statement. (ECF Nos. 41, 42). On February 24, 2015, BMG filed an objection to the disclosure statement. *See* Objection to Disclosure Statement (ECF No. 45). The parties went through mediation, which was ultimately unsuccessful. BMG now seeks relief from or clarification of the Order under Rule 60(b)(1) and (6) of the Federal Rules of Civil Procedure. *See* BMG's Motion ¶ 23. It claims that there was no obligation to provide security for the payments to Mr. Burgio and that the agreements between the parties were not final but merely "agreements[s] to continue negotiating." *See* BMG's Motion at ¶ 18.

## DISCUSSION

Rule 60(b) of the Federal Rules of Civil Procedure is made applicable to bankruptcy proceedings through Federal Rule of Bankruptcy Procedure 9024. Fed. R. Bankr. P. 9024. Rule 60(b) provides, in pertinent part, that "the court may relieve a party . . . from a final judgment, order, or proceeding for . . . (1) mistake, inadvertence, surprise, or excusable neglect; . . . or (6) any other reason that justifies relief." Fed. R. Civ. P. 60(b). The Second Circuit utilizes a three-prong standard when considering a Rule 60(b) motion: "first, there must be 'highly convincing' evidence supporting the motion; second, the moving party must show good cause for failing to act sooner; and third, the moving party must show that granting the motion will not impose an undue hardship on the other party." *Broadway v. City of New York*, 2003 WL 21209635, at *3 (S.D.N.Y. May 21, 2003) (citing *Kotlicky v. U.S. Fid. & Guar. Co.*, 817 F.2d 6, 9 (2d Cir.

5

1987)). The burden of proof on a Rule 60(b) motion is on the movant and is "properly granted only upon a showing of exceptional circumstances." *United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 391 (2d Cir. 2001). "A motion under Rule 60(b) is addressed to the sound discretion of the trial court." *Velez v. Vassallo*, 203 F. Supp. 2d 312, 333 (S.D.N.Y. 2002). When determining Rule 60(b) motions, courts "balance fairness considerations present in a particular case against the policy favoring the finality of judgments." *Williams v. N.Y.C. Dep't of Corrections*, 219 F.R.D. 78, 84 (S.D.N.Y. 2003) (citing *Kotlicky*, 817 F.2d at 9).

### A. BMG's Request for Relief under Rule 60(b)(1)

In its motion, BMG seeks to be absolved of its obligations under the Order, including the obligation to provide confessions of judgment to secure the payments to Mr. Burgio. Turning to the first prong, BMG has failed to produce any evidence, let alone "highly convincing" evidence, supporting its request for relief based on mistake, inadvertence, surprise, or excusable neglect. *See Broadway v. City of New York*, 2003 WL 21209635, at *3. BMG has not identified any controlling law or factual matters that the Court overlooked. *DGM Invs., Inc. v. N.Y. Futures Exch., Inc.*, 288 F. Supp. 2d 519, 523 (S.D.N.Y. 2003); *see also In re Residential Capital, LLC*, 2015 WL 1598090, at *8 (Bankr. S.D.N.Y. Apr. 9, 2015) (citing *In re Old Carco LLC*, 423 B.R. 40, 45 (Bankr. S.D.N.Y. 2010) (on a Rule 60(b)(1) motion, mistake "has been held to include mistakes made by the court")).[1] Rather, BMG points to several alleged inconsistencies between

---

[1] At oral argument on BMG's Motion, BMG's current counsel implied that BMG's prior counsel erred by failing to object to the Order on the grounds that it did not accurately reflect what was so-ordered at the October 29th Hearing. *See* Hr'g Tr. of September 22, 2015 at 18:6–10 (ECF No. 86). However, BMG did not raise such an argument in its papers as a ground for the relief requested. Even if it had, such an argument would fail. While "[r]elief from counsel's error is normally sought pursuant to [Rule] 60(b)(1) on the theory that such error constitutes mistake, inadvertence or excusable neglect" the Second Circuit has found that "an attorney's failure to evaluate carefully the legal consequences of a chosen course of action provides no basis for relief from a judgment." *Nemaizer v. Baker*, 793 F.2d 58, 62 (2d Cir. 1986).

6

the Order, the October 29th Hearing, and the October Letter Agreement. However, the Court finds these inconsistencies are inconsequential.

For example, BMG asserts that while the Order states that the July Letter Agreement was "supplemented" by the October Letter Agreement, in fact the October Letter Agreement "substantially modified and/or . . . substantially superseded" the July Letter Agreement. *See* BMG's Motion ¶ 17(a). This is a distinction without a difference. By its own terms, the October Letter Agreement superseded "in relevant part only," the July Letter Agreement. *See* October Letter Agreement at 1.

BMG alleges a second inconsistency as to the guaranty of the five payments to be made to Mr. Burgio. *See* BMG's Motion ¶ 17(b), (c). At the October 29th Hearing, the Debtor's counsel stated that the $600,000 consulting fee payment would be secured by a confession of judgment from the assignee BMG, and that another $150,000 payment would be subject to a confession of judgment from Nello Balan and/or Lucy Balan. *See* Hr'g Tr. of October 29, 2014 at 19:20–20:14. BMG argues the Order is inconsistent with these statements as "[c]learly, neither Nello Balan nor Lucy Balan had agreed to sign a personal guaranty of the $600,000.00 in consulting fee payments." BMG's Motion ¶ 17. But the language of the Order does not support BMG. It provides in relevant part: "Nello Balan and/or Lucy Balan shall execute a personal guaranty, as per the terms of the Plan LOI, and BMG and Nello Balan and/or Lucy Balan shall execute respective confessions of judgment as per the terms set forth on the so-ordered record . . . ." Order ¶ 6. Thus, there is no inconsistency as the Order incorporates the representations made on the record at the hearing. In fact, the Debtor's counsel subsequently confirmed that the $600,000 payment was to be secured by a confession of judgment by BMG and the $150,000 is to be secured by a confession of judgment by Nello Balan and/or his

7

daughter, Lucy. *See* Hr'g Tr. of September 22, 2015 at 33:12–20; 35:9–25 (the Court stating "[t]here's no independent guarantee other than the two confessions of judgment[;]" to which no party objected).

BMG also attempts to characterize the letter agreements as merely drafts of points to be negotiated further—"essentially an agreement to continue negotiating" to reach an agreement. BMG's Motion ¶ 18. To support its claim, BMG argues the parties never specified what services Mr. Burgio would be required to perform in exchange for receiving the consulting fees referred to in the October Letter Agreement. However, based on testimony offered and BMG's own representations, it is evident the consulting fees to be paid to Mr. Burgio essentially served as a buy-out of his interest in the company. *See* BMG's Motion ¶ 10; Hr'g Tr. of October 29, 2014 at 7:4–17. As relations had soured between Mr. Burgio, Mr. Balan, and Mr. Karam, it had become clear that moving forward the management structure of the company would need to change. Thus, pursuant to the October Letter Agreement Mr. Burgio was to receive a total of $900,000—$600,000 of which was referred to as consulting fees—in exchange for giving up any interest in BMG or any business or restaurant operated on the Premises. *See* October Letter Agreement at 1. At the October 29th Hearing, the Debtor's counsel made clear what the consulting fees represented:

> Under the terms of the letter intent Mr. Bergio [sic], who is going to be an investor and partner in the new entity, based upon his prior contributions, is no longer going to be an investor, and in lieu of that he's going to . . . receive certain consulting payments over a two-year period without any ownership equity rights in the new enterprise.

Hr'g Tr. of October 29, 2014 at 21:3–9. BMG's counsel did not object or challenge that characterization. The Order also provides that: "the terms and conditions of this Order and the Assumption and Assignment Agreement shall be effective immediately." Order ¶ 4. Thus, the

8

Order was not contingent upon further agreement. *See* Hr'g Tr. of October 29, 2014 at 19:7–20 (Debtor's counsel stating the parties reached an agreement as to the "last issue").

BMG further argues that the $900,000 in payments to Mr. Burgio reflected in the October Letter Agreement replaced the $350,000 payment to "buy out" limited partners of the Debtor and the $150,000 payment to Mr. Burgio as deferred compensation. This argument was not made in BMG's Motion but rather at the hearing on September 22, 2015. *See* Hr'g Tr. of September 22, 2015 at 40:10–13, 42:4–9.[2] In any event, the $350,000 "buy out" of the Debtor's limited partners contemplated in the July Letter Agreement is consistent with the relevant portion of the Proposed Plan, which provides that each limited partner is to receive a pro-rata share of $350,000 over four years. Proposed Plan at ¶ 4.4 (ECF No. 41). Furthermore, there is nothing in the record to support BMG's contention that the payments to Mr. Burgio under the October Letter Agreement were intended to supersede the limited partner buy-out.[3]

BMG also relies on paragraph six of the Order which states:

> Nello Balan and/or Lucy Balan shall execute a personal guaranty, as per the terms of the Plan LOI, and BMG and Nello Balan and/or Lucy Balan shall execute respective confessions of judgment as per the terms set forth on the so-ordered record of the [October 29, 2014] Hearing which is incorporated by reference.

Order at ¶ 6. BMG argues paragraph six is "wrong" and is inconsistent with what was stated at the October 29th Hearing. *See* Hr'g Tr. of September 22, 2015 at 14:11–12; 18:3–4. But

---

[2] BMG incorrectly contends that it made this argument in its papers, directing the Court to the fourth box in a chart located in paragraph four of its response. Hr'g Tr. of September 22, 2015 at 43:3–10; *see* Statement of Be My Guest LLC in Reply to Debtor's Motion to Compel ("BMG's Reply") ¶ 4 (ECF No. 78). However, that chart simply references alleged inconsistences between the July Letter Agreement and the Debtor's Proposed Plan. BMG's Reply ¶ 4; *see* Hr'g Tr. of September 22, 2015 at 46:19–47:1. As the argument was not raised in BMG's Motion, it is not properly before the Court. *See c.f. In re Hagerstown Fiber Ltd. P'ship*, 226 B.R. 353, 355 (Bankr. S.D.N.Y. 1998) (concluding on a motion for reargument, "parties cannot advance new facts or arguments").

[3] The Court recognizes there may be issues relating to the Proposed Plan, including but not limited to the appropriateness of proposed payments to the Debtor's principal. However, such issues are not properly before the Court at this time but will be addressed as appropriate at plan confirmation.

BMG's counsel was, in fact, responsible for drafting paragraph six. *See* Exh. E to Debtor's Motion to Compel (ECF No. 76-4). "In cases of doubt or ambiguity, a contract must be construed most strongly against the party who prepared it . . . ." *Jacobson v. Sassower*, 66 N.Y.2d 991, 993 (1985). Having drafted this language and then consented to its entry after the October 29th Hearing, BMG cannot now be heard to complain of its terms. In any event, the Court finds no inconsistency between the so-ordered record and language of paragraph six of the Order.

In sum, the inconsistencies alleged by BMG do not justify granting a Rule 60(b) motion, which is done only in "exceptional circumstances." *Int'l Bhd. of Teamsters*, 247 F.3d at 391. BMG has not offered "highly convincing" evidence that the Order was made in error. BMG's statement that the Order did not "correctly incorporate the understanding among the parties and/or has created confusion" is unavailing. *See* BMG's Motion ¶ 28. The Order is clear in its requirements and consistent with what was agreed to by the parties prior to its entry. Thus, BMG has failed to present convincing evidence to support any of the grounds for relief found in Rule 60(b)(1).

Turning to the second requirement for relief under Rule 60(b), BMG has not shown good cause for failing to act sooner. "Mere dissatisfaction in hindsight with choices deliberately made by counsel is not grounds for finding the mistake, inadvertence, surprise or excusable neglect necessary to justify Rule 60(b)(1) relief." *Nemaizer*, 793 F.2d at 62. Yet that is what BMG is attempting to do here. At the October 29th Hearing, Mr. Urquia, who identified himself as representing Mr. Karam, BMG, and Mr. Balan, indicated on the record that there was a final agreement. *See* Hr'g Tr. of October 29, 2014 at 14:7–11. Mr. Urquia raised no objections at the hearing to having the transcript "so ordered," nor were any objections raised to entry of the

Order. It is only months after the Order was entered on consent and after BMG has hired new counsel that BMG sought relief from the Order.

Finally, turning to the last prong, BMG has failed to show that granting the motion will not cause "undue hardship" to the Debtor. The Debtor prepared and filed a plan of reorganization and a disclosure statement relying on the funding commitments provided in the Order. Additionally, BMG has the Premises—a valuable asset—and thus, the benefit of the Lease on the basis of the compromise memorialized in the Order, something that the Debtor might not have agreed to in the absence of the parties' global settlement. Relying on the so-ordered record of the October 29th Hearing and subsequent Order, the Landlord also refrained from pursuing certain remedies it had at its disposal. Upon balancing the interests of all parties with the policy favoring finality of judgments, the Court finds that there would be prejudice if BMG's Motion were granted. *See Williams*, 219 F.R.D. at 86.

### B. BMG's Claim for Relief Under Rule 60(b)(6)

Finally, BMG's claim for relief under Rule 60(b)(6) is unavailing. Rule 60(b)(6) is not available as a ground for relief "if the reasons offered for relief from [the order] can be considered in one of the more specific clauses of Rule 60(b) . . . ." *Int'l Bhd. of Teamsters*, 247 F.3d at 391–92; *In re Salander*, 450 B.R. 37, 56 (Bankr. S.D.N.Y. 2011) ("Reasons for relief that fall under other subsections of Rule 60(b) do not qualify as justification for relief under Rule 60(b)(6)."); *In re Calpine Corp.*, 363 B.R. 709, 711 (Bankr. S.D.N.Y. 2007) (finding party could not properly move for relief under Rule 60(b)(6) where grounds for his motion were provided for under Rule 60(b)(1)). Here, BMG relies on Rule 60(b)(6) as an alternative ground for relief. Yet courts have been clear that Rule 60(b)(6) simply cannot be used in such a manner. Furthermore, "[t]o justify relief under subsection (6), a party must show 'extraordinary circumstances'

11

suggesting that the party is faultless in the delay." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 393 (1993). BMG has not made such a showing. Rather, BMG's delay is a result of its own inaction. Thus, BMG has failed to demonstrate the existence of exceptional circumstances sufficient to warrant the extraordinary relief provided by Rule 60(b).[4]

## CONCLUSION

Based on the foregoing, the Court denies BMG's Motion to Allow for Limited Relief from the Order Pursuant to Bankruptcy Rule 9024 and grants the Debtor's Motion to Compel Compliance with Order Approving Plan Funding Agreements to the extent it requires the securing of confessions of judgment by BMG and Nello Balan and/or Lucy Balan as per the so-ordered record of the October 29th Hearing and as memorialized in paragraph six of the Order. Such confessions of judgment shall be executed within 10 days of this Order and substantially in the form annexed as Exhibit A to the Debtor's proposed order.

IT IS SO ORDERED.

Dated: New York, New York
December 21, 2015

*/s/ Sean H. Lane*
UNITED STATES BANKRUPTCY JUDGE

---

[4] The Debtor briefly raises the doctrines of judicial and equitable estoppel as alternative theories to support its request that BMG and its principals be compelled to comply with the Order. *See* Debtor's Motion to Compel ¶¶ 53–54. But given the Court's conclusion above to deny BMG's motion, it is unnecessary for this Court to address these alternative bases for enforcing the Order.

As an alternative to compelling BMG and its principals to comply with the Order, the Debtor's Motion requested that the Court vacate the part of the Order that assigned the Lease to BMG, and permit the Debtor to re-market the Lease for sale to a third party. Debtor's Motion to Compel ¶ 7. At the hearing held on September 22, 2015, however, the Debtor's counsel stated this request was "a throwaway line and I'm taking it out . . . . It was in an earlier draft and it should have been removed." Hr'g Tr. of September 22, 2015 at 37:6–12. As the Debtor is no longer seeking this alternative relief, the Court need not address this request. Accordingly, the Court also need not address the Opposition and Response of 14 East 58th LLC to Debtor's Motion to Compel Compliance with Order Approving Plan Funding Agreements (ECF No. 77), in which the Landlord argued against permitting the vacatur of the portion of the Order that assigned the Lease.