**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x

In re:                                                                          Chapter 11

8 WEST 58TH STREET HOSPITALITY, LLC                   Case No. 14-11524 (SHL)

                              Debtor.

----------------------------------------------------------------x

## MEMORANDUM OF DECISION AND ORDER
## DENYING MOTION FOR A STAY PENDING APPEAL

**A P P E A R A N C E S :**

**GOLDBERG WEPRIN FINKEL GOLDSTEIN LLP**
*Counsel to 8 West 58th Street Hospitality, LLC*
1501 Broadway, 22nd Floor
New York, New York 10036
By:    J. Ted Donovan, Esq.
         Kevin J. Nash, Esq.

**PICK & ZABICKI LLP**
*Counsel to Be My Guest LLC*
369 Lexington Avenue, 12th Floor
New York, New York 10017
By:    Douglas J. Pick, Esq.
         Eric C. Zabicki, Esq.

**SEAN H. LANE**
**UNITED STATES BANKRUPTCY JUDGE**

  Before the Court is the motion of Be My Guest LLC ("BMG") (ECF No. 99) for a stay

pending appeal and for a temporary restraining order as to this Court's Memorandum of Decision

and Order, dated December 21, 2015 (the "Decision") (ECF No. 91).  For the reasons set forth

below, the motion is denied.

## BACKGROUND

  The background in this case is set forth in some detail in the Decision, familiarity with

which is assumed.  *See In re 8 West 58th St. Hospitality, LLC*, 2015 WL 9311525 (Bankr.

S.D.N.Y. Dec. 21, 2015).  But certain facts must be briefly recounted to understand this motion.

The Debtor was formed in February 2012 to develop and operate a restaurant.  To that end, the

Debtor entered into a lease agreement in August 2012 for 14 East 58th Street, New York, New

York.  While the restaurant opened in fall 2013, the Debtor ultimately defaulted under the

payment terms of the lease and the landlord commenced eviction proceedings.

On May 20, 2014, the Debtor filed for protection under Chapter 11 of the Bankruptcy

Code.  After the filing, the landlord sought to compel the Debtor to pay its post-petition

obligations under the lease.  The Debtor's principal, Max Burgio, had entered into negotiations

with an individual named Nello Balan regarding the possible funding of the Debtor's exit from

Chapter 11.  The Debtor eventually entered into its first agreement in July 2014 with Nello Balan

and his daughter Lucy Balan (the "July Letter Agreement").  The July Letter Agreement

generally provided for the restructuring of the restaurant in Chapter 11 with Lucy Balan, either

individually or through BMG, acting as the ultimate funder of the reorganization plan.  The July

Letter Agreement itemized payments to be made under the proposed plan and included payments

to limited partners in various amounts, including a payment upon confirmation to Mr. Burgio

described as "deferred compensation."  *See* July Letter Agreement at 2 (ECF No. 99-3).  The

July Letter Agreement had other terms, including provisions about membership interests in the

Debtor and about who would run the restaurant.  On September 4, 2014, the Court entered a

consent order to resolve the landlord's motion to compel under which the landlord received

certain monies.  *See* Consent Order ¶ 1 (ECF No. 21).  With that problem resolved, the Debtor

filed a motion to assume and assign the lease under 11 U.S.C. § 365(a) and (f).

In the meantime, relations between Mr. Balan and Mr. Burgio had deteriorated, and the

parties sought to change their original agreement.  By letter of October 20, 2014, Mr. Balan, Mr.

2

Burgio, and Oswaldo Karam, a South American businessman who was involved as a financial partner in BMG, entered into an agreement (the "October Letter Agreement") that superseded "in relevant part only" the July Letter Agreement. In the October Letter Agreement, Mr. Burgio forfeited any ownership or other interest of any kind in BMG or to any restaurant or business to be operated at the Premises. *See* October Letter Agreement at 1 (ECF No. 99-4). In exchange, Mr. Burgio would be paid a total of $900,000, "to be personally guaranteed by Nello, Lucy or the entity they use to invest in BMG." *Id.* BMG would guarantee all the payments set forth in the October Letter Agreement except for a $150,000 payment to be made on December 15, 2014 by Mr. Balan. *See id.* The $900,000 was broken into five payments, the relevant payments here being: $150,000 on December 15, 2014, payable by Nello and two payments of $300,000 "as a consulting fee" payable by BMG. *Id.*

A hearing was held on October 29, 2014 (the "October 29th Hearing") to consider the Debtor's motion to assume and assign the lease. At the hearing, counsel was present for the Debtor, BMG, and the landlord. The parties informed the Court of a final agreement to resolve security for certain payments under the October Letter Agreement as follows: (i) the $600,000 consulting fee payment to Mr. Burgio would be secured by a confession of judgment from BMG; and (ii) the $150,000 deferred payment to Mr. Burgio would be subject to a confession of judgment from Nello Balan and/or his daughter Lucy. Hr'g Tr. of October 29, 2014 at 19:20–20:15 (ECF No. 47). The parties also agreed to extensions of time for some of the payments, including, but not limited to, extending the date by which Mr. Burgio was to be paid the $150,000 from December 15, 2015 to January 15, 2015. *See id.* at 19:20–22. No party raised any objections to the terms of the final agreement or to the Debtor's request to have the hearing transcript "so-ordered" by the Court. *Id.* at 20:25–21:7.

3

After the hearing, a proposed order was circulated among the parties. Once all parties had an opportunity to propose and implement changes, the order was submitted to the Court on consent. No objections were made and the order was entered on November 6, 2014. *See* Order Authorizing Assumption and Assignment of the Debtor's Commercial Lease for Premises at 14 East 58th Street, New York, NY (the "Order") (ECF No. 35). The Order provided that BMG agreed to fund a plan based upon the "Plan LOI" in return for the assignment of the lease to BMG. *See* Order at 1. The Order defined the "Plan LOI" as: "(i) the Letter of Intent dated July 9, 2014, as supplemented by letter dated October 20, 2014; and (ii) the statements made on the so-ordered record of the [October 29, 2014] Hearing relating to the execution of confessions of judgment by BMG and Nello Balan and/or Lucy Balan to secure certain deferred payments to Max Burgio." *See id.*

As it turns out, BMG did not make the $150,000 payment to Mr. Burgio on January 15, 2015, as required by the Order. BMG eventually sought relief from or clarification of the Order under Rule 60(b)(1) and (6) of the Federal Rules of Civil Procedure, claiming there was no obligation to provide security for the payments to Mr. Burgio and that the agreements between the parties were not final but merely "agreements[s] to continue negotiating." *See* ECF No. 68-1, at ¶ 18. In its Decision, the Court denied BMG's motion for relief from the Order and granted the Debtor's cross-motion seeking to enforce the Order as to the guarantees.

### DISCUSSION

Rule 8005 of the Federal Rules of Bankruptcy Procedure authorizes a bankruptcy judge to stay a judgment or order pending appeal. The same standards that govern a stay pending an appeal from a District Court order to the Court of Appeals apply in the case of an appeal from

4

the Bankruptcy Court to the District Court. *See In re Savage & Assocs., P.C.*, 2005 WL 488643, at *1 (S.D.N.Y. Feb. 28, 2005).

The decision to grant or deny a stay pending appeal is committed to the discretion of the bankruptcy court. *See Nken v. Holder*, 556 U.S. 418, 433 (2009). "The four factors to be considered in issuing a stay pending appeal are well known: '(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" *In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)); *accord Nken*, 556 U.S. at 426.

The first two factors are the most critical. *Nken*, 556 U.S. at 434. "It is not enough that the chance of success on the merits be 'better than negligible.'" *Id.* (quoting *Sofinet v. INS*, 188 F.3d 703, 707 (7th Cir. 1999)). "By the same token, simply showing some 'possibility of irreparable injury' fails to satisfy the second factor." *Nken*, 556 U.S. at 434–35 (citation omitted). "'The probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiff will suffer absent the stay. Simply stated, more of one excuses less of the other.'" *Mohammed v. Reno*, 309 F.3d 95, 101 (2d Cir. 2002) (quoting *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991)); *accord Thapa v. Gonzales*, 460 F.3d 323, 334 (2d Cir. 2006).

The Court concludes that BMG has not satisfied the requirements for a stay pending appeal. As to the first requirement, BMG has not demonstrated that it is likely to succeed on appeal for several reasons. As an initial matter, BMG faces a high hurdle in appealing a decision denying relief under Rule 60(b) of the Federal Rules of Civil Procedure, which is to be granted

only on a showing of "exceptional circumstances," *United States v. Int'l Bhd. of Teamsters*, 247

F.3d 370, 391 (2d Cir. 2001), and is in the "sound discretion of the trial court." *Velez v.

Vassallo*, 203 F. Supp. 2d 312, 333 (S.D.N.Y. 2002). The Second Circuit utilizes a demanding

three-prong standard when considering a Rule 60(b) motion: "first, there must be 'highly

convincing' evidence supporting the motion; second, the moving party must show good cause for

failing to act sooner; and third, the moving party must show that granting the motion will not

impose an undue hardship on the other party." *Broadway v. City of New York*, 2003 WL

21209635, at *3 (S.D.N.Y. May 21, 2003) (citing *Kotlicky v. U.S. Fid. & Guar. Co.*, 817 F.2d 6,

9 (2d Cir. 1987)). In addition, BMG seeks relief from what seems to be an interlocutory order,

although it appears not to have sought permission to file such an interlocutory appeal. *See In re

Palm Coast, Mantanza Shores Ltd.*, 101 F.3d 253, 256 (2d Cir. 1996).

In addition, the arguments raised by BMG on the merits are not persuasive. While this

Court is mindful that it is being asked to review a decision it has already made, the Court was

unpersuaded by the merits arguments presented in BMG's stay application. For example,

BMG's counsel at the stay hearing, held on March 2, 2016, spent considerable time discussing

issues involving the potential confirmation of a plan in this case and other discussions between

the parties. But none of that affects what was clearly set forth in the Order. Similarly, BMG's

counsel argued that the Court had no business imposing an obligation upon BMG to pay Mr.

Burgio, who is not the Debtor. But BMG misses the point. The Court did not impose the

obligation upon BMG—BMG freely took the obligation upon itself while represented by counsel

as part of an agreement reached among the parties and presented to the Court for approval.[1] That

---

[1]     Counsel now representing BMG is not the same counsel who negotiated the July Letter Agreement and the
October Letter Agreement, and who was present at the Court hearing where the agreement was presented and who
participated in the drafting of the Order that was ultimately signed by the Court. It is hard to escape the conclusion
that BMG is unhappy with the agreement that it originally struck through prior counsel.

agreement was reached through negotiations during ongoing litigation in this case, including the Debtor's motion to assume the lease and the landlord's motion to compel payment, as well as discussions about a plan to allow the Debtor to emerge from bankruptcy.  Indeed, the agreement was contained in the Order granting Debtor's motion to assume the lease.  Given the numerous parties with an interest in the lease—the most valuable asset of the Debtor's estate—it is not surprising that the agreement covered parties other than the Debtor.  Finally, the Court finds BMG's remaining arguments on the merits to be unpersuasive for the reasons stated in the Court's original Decision.

As to the second requirement, BMG has not established irreparable harm sufficient to justify a stay.  While BMG says that it will be irreparably harmed absent a stay, the obligation here is of a monetary nature.  It is well established that "[m]onetary loss alone will generally not amount to irreparable harm." *Borey v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 934 F.2d 30, 34 (2d Cir. 1991).  "[W]hen a party can be fully compensated for financial loss by a money judgment, there is simply no compelling reason why the extraordinary equitable remedy of a preliminary injunction should be granted." *Id.*  While BMG claimed at the stay hearing that money paid to Mr. Burgio would not be recoverable, it presented no evidence on this point. BMG's position is also severely undercut by the representation on the record at the stay hearing by Debtor's counsel that any money paid as a result of the guarantees would be paid to Debtor's counsel and held in escrow until the conclusion of the case.

Finally, the third and fourth requirements do not favor the granting of a stay.  In addition to the items addressed above, the Court notes that BMG waited almost a month after the Decision was issued before filing what it styled as an emergency motion for a stay.  Such a failure to act promptly undercuts BMG's request for injunctive relief.  *See Tough Traveler, Ltd.*

7

*v. Outbound Prods.*, 60 F.3d 964, 968 (2d Cir. 1995) ("[T]he failure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury.") (citation omitted); *see also In re First Republic Grp. Realty, LLC.*, 421 B.R. 659, 679 (Bankr. S.D.N.Y. 2009). But even more troubling, BMG's counsel granted itself its own stay: it simply never bothered to comply with the Court ordered requirement that confessions of judgment by BMG and Nello Balan and/or Lucy Balan "be executed within 10 days of this Order and substantially in the form annexed as Exhibit A to the Debtor's proposed order." *In re 8 West 58th St.*, 2015 WL 9311525, at *6. As a matter of public policy, the Court is loath to reward BMG's failure to comply with a court order by granting the requested stay.[2]

**CONCLUSION**

Based on the foregoing, the Court denies BMG's motion for a stay pending appeal and for a temporary restraining order.

**IT IS SO ORDERED.**

Dated: New York, New York
        March 4, 2016

                                        */s/ Sean H. Lane*_____
                                        UNITED STATES BANKRUPTCY JUDGE

---

[2] The Court notes that this is not the first time that BMG has ignored a Court order: BMG failed to make the $150,000 payment by January 15, 2015 as required by the Order but did not seek relief from that Order until many months later when BMG filed its Rule 60(b) motion in July 2015. *See* ECF No. 68.